IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

DEVIN BROWN,

Plaintiff,

v. Case No. 16CV0979

JAMES ECK,

Defendant.

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

---

This is a civil rights action under 42 U.S.C. § 1983 in which Plaintiff Devin Brown has been allowed to proceed on a claim that Officer James Eck was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. The parties' cross-motions for summary judgment raise three issues:

> Whether Brown had an objectively serious medical need based on his subjective report of difficulty breathing and back and chest pains, when there is no objective evidence of any kind that Brown had a medical condition, and Brown was given only ibuprofen and a muscle rub by a nurse.
>
> Whether Brown's alleged report to Officer Eck of such difficulty breathing and chest and back pain gave rise to a duty under the Eighth Amendment to *immediately* call medical staff, when the evidence shows that medical staff would not have given Brown immediate medical attention if such a call had been made.
>
> Whether Brown was harmed by the failure to immediately call medical staff, when medical staff was called just a few hours later, at which time they deemed an immediate assessment of Brown unnecessary based on the same alleged symptoms Brown claims he described to

Officer Eck, and when Brown was medically evaluated the next day, at which time a nurse could not detect anything wrong with Brown.

As explained below, the answer to each question is "no." Brown's motion for summary judgment must therefore be denied and Officer Eck's motion for summary judgment should be granted.

**Statement of Facts**

Officer Eck was assigned to Green Bay Correctional Institution's Dorm A for third shift on September 12, 2015. (DPFOF ¶ 1.) This shift began at 10 p.m. on Saturday, September 12 and ended at 6 a.m. on Sunday, September 13. (*Id.* ¶ 2.) Medical staff was not present at the prison from 12 a.m. until around 5:30 a.m. Sunday, although they were available by phone. (*Id.* ¶ 3.)

Officer Eck, a sergeant, and another officer were supervising 111 inmates on Dorm A during this shift. (*Id.* ¶ 4.) Dorm A is a dormitory style wing, with rows of beds occupying the center of a large open room. (*Id.* ¶ 5.) The inmates are not contained in individual cells. (*Id.* ¶ 6.) Upon entering Dorm A, there is an officer in the control center that opens and closes the doors. (*Id.* ¶ 7.) This officer is located on the same level as the bunks. (*Id.* ¶ 8.) There is also a sergeant and a second officer who sit at an elevated desk above the bunk area with a view of the bunks as well as the shower and dayroom. (*Id.* ¶ 9.) If an inmate wishes to communicate with staff, he can get out of his bunk and walk to the officer in the control center, or to the sergeant's station. (*Id.* ¶ 10.) During third shift on September 12, Officer Eck was at times the officer sitting with the sergeant at the elevated desk and at other times actively patrolling the inmates' sleeping area. (*Id.* ¶ 11.)

Around two o'clock Sunday morning, Officer Eck was seated at the sergeant's desk with Sergeant Spoerl. (*Id.* ¶ 12.) Brown approached Eck and told him he was not feeling well. (*Id.*) The parties dispute exactly what Brown said, but Brown claims (and Eck denies) Brown reported having chest and back pain and difficulty breathing. (*See* Def.'s Resp. to Pl.'s Proposed Findings of Fact ¶ 1; DPFOF ¶ 14.) In any event, Officer Eck did not observe Brown sweating, having difficulty breathing, or showing any other behaviors that would indicate he was in pain, despite the fact that Brown was approximately five to six feet in front of Officer Eck. (*Id.* ¶ 15.)

Officer Eck told Brown nursing staff had left the institution as of midnight. (*Id.* ¶ 13.) Brown also alleges Officer Eck told Brown he would "have to wait." (Pl's Proposed Findings of Fact ¶ 2.) It is undisputed that Brown then walked back to his bunk, walking without apparent difficulty, and that Brown did not approach the sergeant's desk or the control officer's desk for the rest of the shift to say he was not feeling well or indicate that he wanted medical attention. (*Id.* ¶¶ 18-20.) Officer Eck conducted two sets of rounds during that shift after Brown had approached him and Brown did not repeat to Officer Eck that he wasn't feeling well, nor indicate in any way the he wanted medical attention. (*Id.* ¶ 21.) Officer Eck was also able to observe the entire sleeping area both from his position at the sergeant's desk and while he was patrolling the sleeping area, and Brown did not catch Officer Eck's attention from Brown's bed that night in any way that would have indicated that Brown was in distress (e.g., thrashing, sitting up or standing, calling out, etc.). (*Id.* ¶¶ 22-23.) As noted above, Officer Eck's shift ended at six o'clock Sunday morning.

Around the time of the shift change, Brown spoke with the first shift sergeant on Dorm A. (*Id.* ¶ 24.) That sergeant called the Health Services Unit of the prison, which by that time was staffed, and relayed Brown's report that he was having problems breathing. (*Id.* ¶ 25.) Brown alleges this occurred at around 5:30 a.m., while documents suggest it occurred at around 8:15 a.m. (*Id.* ¶ 26.) In any event, the nurse in the Health Services Unit did not deem it necessary to give Brown immediate medical attention; instead, Brown was added to the sick call list, meaning he was scheduled to see nursing staff the next morning (Monday, September 14). (*Id.* ¶ 27.)

Brown also submitted a written health services request slip Sunday morning stating that he was having back and chest pain since Friday night; that the pain worsened Saturday night, and that it hurt to take deep breaths. (*Id.* ¶ 28.) Brown alleges he personally handed this form to a nurse at or about 6:45 a.m. Sunday while the nurse was making her regular rounds. (*Id.* ¶ 29.) Despite the written request explaining his symptoms, nursing staff did not deem it necessary to give Brown immediate medical attention; instead, the nurse noted that Brown was scheduled to see nursing staff the next morning. (*Id.* ¶ 30.)

Brown was seen and evaluated by a nurse in the Health Services Unit at 10:30 a.m. on Monday. (*Id.* ¶ 31.) Brown complained of back pain to his right side, across his side and under his right breast. (*Id.* ¶ 32.) Brown denied any injury and reported that he had been trying stretches. (*Id.* ¶ 33.) Brown also reported that it hurt to lay down. (*Id.* ¶ 34.) The nurse reported on examination that Brown was in

no acute distress, had an even and steady gait, had no visual or palpable abnormalities on his back, side, or chest, and no redness or swelling. (*Id.* ¶ 35.) The nurse also assessed that Brown had no apparent abnormalities relating to his psychological condition, respiratory system, cardiovascular system, or musculoskeletal system. (*Id.* ¶ 36.) The nurse diagnosed "alteration in comfort," meaning pain, provided ibuprofen and a muscle rub, and told Brown to rest. (*Id.* ¶¶ 37-38.) The nurse deemed a referral to an advanced care provider unnecessary. (*Id.* ¶ 39.) Although a follow-up appointment with nursing staff was apparently scheduled for one week later, after this evaluation on Monday, September 14, Brown was not seen again, and did not request to be seen again, regarding this ailment. (*Id.* ¶ 40.)

Based on the foregoing undisputed facts, particularly, that nursing staff did not believe it was necessary to provide Brown immediate medical attention later Sunday morning, and nursing staff could find nothing wrong with Brown on Monday morning, Brown did not have an objectively serious medical condition when he approached Officer Eck at two o'clock Sunday morning. (*Id.* ¶ 41.) Neither was Brown harmed by Officer Eck's failure to immediately contact medical staff. (*Id.* ¶ 42.)

**Legal Standard**

Summary judgment is appropriate where the moving party shows there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A defendant may satisfy its

initial burden under Rule 56 by pointing to the plaintiff's failure to introduce sufficient evidence to support any essential element of the plaintiff's claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If this initial burden is met, the plaintiff must cite specific facts in the record to support its case. *Anderson*, 477 U.S. at 257 ("[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."). "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

**Argument**

To prove an Eighth Amendment claim based on deliberate indifference to a serious medical need, an inmate must show, as an objective matter, he has a sufficiently serious medical condition, and as a subjective matter, that the defendant was deliberately indifferent to the medical condition. The subjective deliberate-indifference showing has two components: the defendant must have had subjective knowledge of a substantial risk of serious harm, and the defendant must have also disregarded that risk. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). When an inmate alleges a delay rather than a denial of medical attention, the inmate must produce medical evidence showing the delay (rather than merely an underlying injury or condition) harmed him. *Jackson v. Pollion*, 733 F.3d 786, 790

(7th Cir. 2013) (quoting *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007)). Here, the evidence falls short on each aspect of Brown's Eighth Amendment claim.

## I. Brown cannot show he had an objectively serious medical need.

In the Seventh Circuit, an objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the need for a doctor's attention. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). In this case, there is no evidence that Brown has or had a condition that has been diagnosed by a doctor as requiring treatment. There is no evidence of a diagnosis of an underlying medical condition at all (e.g. asthma, muscle spasms). Neither is there evidence that Brown had a condition so obvious that even a lay person would easily recognize the need for a doctor's attention. Indeed, after Officer Eck allegedly refused to call nursing staff, first shift staff did call nursing staff, and Brown also personally handed the health services request to nursing staff. Notably, Brown's health services request described his symptoms—difficulty breathing and "throbbing" back/chest pain—substantially the same way Brown claims he described them to Eck. Yet neither interaction with nursing staff prompted them to provide *any* immediate medical attention to Brown. Instead, Brown was scheduled for a routine evaluation Monday morning. And after the nurse evaluated Brown Monday morning, the nurse specifically deemed a referral to an advanced care provider unnecessary.

Brown argues that pain alone can be a serious medical need. He cites *Smith v. Knox County Jail*, 666 F.3d 1037 (7th Cir. 2012) (per curiam), in which the Seventh Circuit reversed a screening order that found no objectively serious medical need despite allegations that the plaintiff was attacked and then bled, vomited, sustained retinal and corneal damage and endured dizziness and severe pain for five days. *Smith* is inapposite. *Smith* was decided at the pleading stage and it involved the allegation of a lengthy delay in providing treatment for injuries sustained after a vicious assault. This case involves what turns out to have been benign discomfort, starting Friday, worsening early Saturday night, and for which Brown received minimal treatment Monday morning.

The Seventh Circuit has recently reversed a grant of summary judgment for several defendants in a case involving a brief delay in providing treatment to an inmate who was experiencing painful back spasms. *See Lewis v. McLean*, 864 F.3d 556 (7th Cir. 2017). *Lewis* too, however, is readily distinguishable from this case. The inmate in *Lewis* alleged crippling and immobilizing pain. This was reportedly corroborated by video evidence. The inmate was sobbing in pain while the defendants looked on. And when the inmate was eventually transported to the emergency room, he was diagnosed by doctors with muscle spasms and myalgia (muscle pain) and given powerful narcotics and anxiety medication. Here, by Brown's own account, he walked across the dormitory-style unit to speak with Officer Eck. Brown showed no objective signs of discomfort, whether during the brief interaction with Eck at 2 a.m. or throughout the rest of the shift. Moreover,

the nurse's findings upon evaluating Brown the next day were entirely unremarkable, and the treatment provided was minimal.

To satisfy the objective element of an Eighth Amendment deliberate-indifference claim, the Supreme Court has explained that the deprivation alleged must be akin to the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, "the illness or injury for which assistance is sought [must be] sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Here, the evidence does not show that Brown's condition was so painful or otherwise serious that the denial of immediate medical attention can be characterized as uncivilized.

## II. Brown cannot show Officer Eck's failure to immediately call medical staff was deliberate indifference a serious medical need, nor that he was harmed by Officer Eck's failure to act.

To satisfy the subjective element of his claim, Brown must show that Officer Eck was actually aware of a substantial risk of serious harm, and that Eck disregarded that risk. *Gayton*, 593 F.3d at 620. As noted above, when an inmate alleges a delay (rather than complete denial) of medical assistance, he generally must have medical evidence showing the delay itself was harmful. *Jackson*, 733 F.3d at 790. This rule is typically discussed in the context of the objective element of an Eighth Amendment claim. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (adopting requirement that inmate offer "verifying medical evidence" to show delay was objectively serious). However, when an inmate alleges he was subjected

to prolonged, unnecessary pain, rather than that delay worsened an injury or medical condition, the inquiry shifts to the subjective element of the claim: "'A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury *or unnecessarily prolonged his pain*,' and 'even brief, unexplained delays in treatment may constitute deliberate indifference.'" *Lewis*, 864 F.3d at 563. Thus, the defendant's reason for the delay (or lack thereof), as well as the seriousness of the medical need (or lack thereof), become the relevant questions. "'[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.' Even a few days' delay in addressing a severely painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith*, 666 F.3d at 1040 (citation omitted) (collecting cases).

In this case, Officer Eck avers that he did not actually believe Brown had a serious medical need. (DPFOF ¶ 43.) He also explains the reasons for that lack of belief: he does not recall Brown stating he was having chest pains or difficulty breathing, and believes he would have contacted the on-call nurse had Brown said so (or notified his supervisor, who would have called) and he did not observe Brown to be in any kind of distress at any time during the night in question. (Def.'s Resp. to Pl.'s Proposed Findings of Fact ¶ 1; Eck Decl. ¶¶ 9-17.) Based on this evidence, Brown's affirmative motion for summary judgment must be denied. Brown has not shown as a matter of law that Officer Eck was aware of a substantial risk of serious harm, and disregarded that risk.

Coupled with the record as a whole, moreover, Eck's explanation shows he was not deliberately indifferent as a matter of law. The undisputed facts show that when nursing staff was contacted later Sunday morning (twice between 5:30 and 8:15 a.m.), they did not believe it was necessary to provide immediate medical attention to Brown. In other words, if Eck had called, nursing staff would not have done anything other than schedule Brown for a routine evaluation at the next available time. Brown does not even allege otherwise (i.e., he does not allege that nursing staff would have provided immediate treatment if Eck called), and there would be no factual basis for him to do so in any event.

The evidence thus shows that medical attention was not so readily available that the short delay attributable to Eck (2 a.m. to 5:30 a.m., by Brown's own account, or to 8:15 a.m. at the very latest) can be deemed deliberate indifference. This is not a case of severe, unnecessary, prolonged pain and inexplicable delay; it is a case of moderate, arguably serious discomfort, and reasonable delay, given the time of night and lack of available treatment options.

Brown argues Officer Eck "ignored protocol," and he submits a policy stating that staff should report to the on-call nurse if they observe inmates having difficulty breathing. (Dkt. 25-1 at 3.) There is no evidence in the record that Eck observed Brown having difficulty breathing; only that Brown alleges he told Eck that. Moreover, a failure to follow protocol does not translate to an Eighth Amendment violation. *Gayton*, 593 F.3d at 622-23 (summary judgment appropriate despite nurse's failure to follow protocol regarding inmate complaint of chest pains).

Brown's arguments that Eck "should have" asked follow up questions or shown more concern in general likewise miss the mark. *Langston*, 100 F.3d at 1238 ("The Court in *Farmer* also emphasized that negligence is insufficient to impose liability: '[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'").

The Eighth Amendment does not impose on a prison guard an absolute duty to call an on-call nurse in the middle of the night merely because an inmate reports pain when taking deep breaths. Moreover, when the undisputed evidence shows that nursing staff would not have done anything for the inmate if the guard had called, the only reasonable conclusion is that the guard is not liable. In these circumstances, Officer Eck's failure to immediately call nursing staff was not deliberate indifference, and Brown cannot show he was harmed by Eck's failure.

For these reasons, Officer Eck is entitled to summary judgment on the subjective element of Brown's claim as well.

**Conclusion**

Accordingly, Brown's motion for summary judgment should be denied, Defendant's motion for summary judgment should be granted, and this case should be dismissed with prejudice.

Dated this 1st day of September, 2017.

Respectfully submitted,

BRAD D. SCHIMEL
Wisconsin Attorney General

s/Samuel T. Berg
SAMUEL T. BERG
Assistant Attorney General
State Bar #1086604

Attorneys for Defendant

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2229
(608) 267-8906 (Fax)
bergst@doj.state.wi.us