# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DEVIN L. BROWN,

               Plaintiff,

v.

JAMES ECK,

               Defendant.

Case No. 16-CV-979-JPS

**ORDER**

      Plaintiff Devin L. Brown ("Brown"), a prisoner, brings this action pursuant to 42 U.S.C. § 1983 against Defendant James Eck ("Eck"), a correctional officer at Green Bay Correctional Institution ("GBCI"). Brown alleges that Eck was deliberately indifferent to his serious medical needs, in violation of his rights under the Eighth Amendment. Before the Court are the parties' cross-motions for summary judgment. (Docket #22, #26). For the reasons stated below, Eck's motion will be granted, Brown's motion will be denied, and the case will be dismissed.

**1.    STANDARD OF REVIEW**

      Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most

favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

## 2. RELEVANT FACTS[1]

This case concerns an interaction between Brown and Eck in the early morning hours of September 13, 2015, while Brown was incarcerated in Dorm A at GBCI. Eck was assigned to Dorm A for the third shift, from 10:00 p.m. on Saturday, September 12 until 6:00 a.m. on Sunday, September 13. Medical staff were not present at the prison from midnight until around 5:30 a.m. that Sunday, although they were always available by phone.

Eck and another officer were supervising 111 inmates on Dorm A during this shift. Dorm A is a dormitory style wing, with rows of beds occupying the center of a large open room. The inmates are not contained in individual cells. Upon entering Dorm A, there is an officer in the control center who opens and closes the doors. This officer is located on the same level as the bunks. There is also a sergeant and a second officer who sit at an elevated desk above the bunk area with a view of the bunks as well as

---

[1]At times, Brown attempted to dispute certain of Eck's factual assertions without providing any contrary evidence at all—not even his own sworn testimony. *See, e.g.*, (Docket #40 ¶¶ 10–12, 21, 23, 26–27, 35–36). Evidence-free assertions are not enough to raise a valid dispute, and so the Court treated those facts as undisputed. *See* Fed. R. Civ. P. 56(c)(1); Civ. L. R. 56(b)(2)(B)(i).

the shower and dayroom. If an inmate wishes to communicate with staff, he can get out of his bunk and walk to the officer in the control center, or to the sergeant's station.

During third shift on September 12, Eck was at times the officer sitting with the sergeant at the elevated desk and at other times actively patrolling the inmates' sleeping area. Around 2:00 a.m. on Sunday morning, Eck was seated at the sergeant's desk with another officer, Sergeant Spoerl.[2]

Brown approached Eck and told him he was not feeling well. The parties dispute exactly what Brown said, but Brown claims that he reported having "throbbing" chest and back pain and difficulty breathing. (Docket #27 ¶ 1). Eck denies that Brown said this. In any event, Eck did not observe Brown sweating, having difficulty breathing, or showing any other behaviors that would indicate he was in pain, despite the fact that Brown was approximately five to six feet in front of Eck.

Eck did not inquire further about Brown's condition. Instead, he told Brown that the nursing staff had left the institution as of midnight. Brown alleges that Eck then told Brown he would "have to wait." *Id.* ¶ 2. Brown then walked back to his bunk, and Eck observed that he did so without apparent difficulty. Brown did not approach the sergeant's desk or the control officer's desk for the rest of the shift to report that he was not feeling

---

[2]Brown vehemently denies that Spoerl was there, *see* (Docket #35 at 5), but he cites no evidence supporting his view. Moreover, although Brown appears intent upon vindicating his precise recollection of the events of September 12–13, it simply does not matter whether Spoerl was seated next to Eck for purposes of Brown's claim. Additionally, Brown's gripes about Eck's discovery responses, littered throughout his submissions on summary judgment, are wholly inapposite to the issues before the Court. If Brown had a reason to believe that Eck was refusing to answer proper discovery requests, a motion to compel was the procedural vehicle in which to raise such concerns.

well or otherwise indicate that he wanted medical attention. Eck conducted two sets of rounds during that shift after Brown had approached him. During those rounds, Brown did not repeat to Eck that he was not feeling well or indicate in any way that he wanted medical attention. Eck was also able to observe the entire sleeping area both from his position at the sergeant's desk and while he was patrolling the sleeping area, and Brown did not catch Eck's attention from Brown's bed that night in a manner suggesting that Brown was in distress (*e.g.*, thrashing, sitting up or standing, calling out, etc.). None of the other officers on the third shift observed Brown having any health issue that night, either. *See* (Docket #40 ¶ 17).

Nevertheless, Brown claims that he suffered "unbearable pain" until the morning shift change. (Docket #25 ¶ 4). He asserts that he "chose not to be disruptive after following the proper steps to seek medical attention." (Docket #35 at 3).

Eck's shift ended at 6:00 a.m. Around the time of the shift change, Brown spoke with the next shift's sergeant assigned to Dorm A. That sergeant called the Health Services Unit ("HSU") of the prison, which by that time was staffed, and relayed Brown's report that he was having problems breathing. Brown alleges this occurred at around 5:30 a.m., while documents suggest it occurred at around 8:15 a.m. Brown also filled out an HSU request for care and delivered it to the nurse who was making her regular rounds at 6:45 a.m. The nurse did not deem it necessary to give Brown immediate medical attention. Instead, Brown was added to the sick call list and was seen the next morning on Monday, September 14.

At that appointment, Brown reported pain in his back and his right side. He claimed that he did not suffer an acute injury and had been trying

to stretch the affected area. He reported that it hurt to lay down. The nurse examined Brown and concluded that he displayed no acute distress, had an even and steady gait, had no visual or palpable abnormalities on his back, side, or chest, and had no redness or swelling. The nurse also assessed that Brown had no apparent abnormalities relating to his psychological condition, respiratory system, cardiovascular system, or musculoskeletal system. The nurse diagnosed "alteration in comfort," meaning pain, provided ibuprofen and a muscle rub, and told Brown to rest. The nurse deemed a referral to an advanced care provider unnecessary. Although a follow-up appointment with nursing staff was apparently scheduled for one week later, Brown was not seen again, and did not request to be seen again, regarding this ailment.

3. **ANALYSIS**

The dispute in this case is simple: was Eck required to immediately contact the on-call nurse upon Brown's complaint of pain and difficulty breathing? Brown says yes, arguing that prison policy and concern for inmates' well-being demanded it. Eck disagrees, contending that Brown may not demand health care exactly when and how he desires. Because Brown did not appear to be in any immediate distress, Eck believes that he rightfully told Brown to wait.

To prove that Eck was deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment, Brown must show: (1) an objectively serious medical condition; (2) that Eck knew of the condition and was deliberately indifferent in treating it; and (3) this indifference caused Brown some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health,

and the official also must disregard that risk." *Id.* Even if an official is aware of the risk to the inmate's health, "he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 843 (1994)).

Moreover, it must be remembered that deliberate indifference is greater than ordinary or even gross negligence. *McGill v. Duckworth*, 944 F.2d 344, 348 (7th Cir. 1991); *Hughes v. Joliet Corr. Ctr.*, 931 F.2d 425, 428 (7th Cir. 1991). Similarly, the operative question is not whether the plaintiff believes some other course of treatment would have been better. *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996); *Reynolds v. Barnes*, 84 F. App'x 672, 674 (7th Cir. 2003) ("[T]he Constitution does not mandate that a prisoner receive exactly the medical treatment he desires.").

Brown's evidence fails to satisfy the first two elements of his claim. First, he has not proffered sufficient evidence demonstrating that he had an objectively serious medical need. An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). It need not be "life-threatening," *id.*, but to rise to the level of constitutional seriousness, the condition should constitute "a denial of the minimal civilized measure of life's necessities," *Farmer*, 511 U.S. at 834. Thus, a medical need may be deemed serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering when treatment is withheld, *Gutierrez*, 111 F.3d at 1367–73, "significantly affects an individual's daily activities," *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998), or otherwise subjects the prisoner to a substantial risk of serious harm, *Farmer*, 511 U.S. at 834.

Brown proffers no evidence that he had a pre-existing diagnosis relevant to his claims of distress on the morning of September 13, such as asthma or heart problems. Nor would Eck be expected to recognize a need for treatment from Brown's conduct that night, since Brown made only one request for care and then spent several hours in Dorm A without so much as a whimper. There is also no evidence regarding Brown's alleged distress over the course of Sunday the 13th, suggesting that his condition was not serious. When Brown was eventually seen by HSU personnel on the morning of Monday the 14th, the nurse found nothing wrong with him at all. There is no more than a scintilla of evidence in this case that Brown had a medical need.

Brown suggests that the pain he experienced that night was enough to constitute a serious medical need. As mentioned above, a delay in care that causes needless pain can, in certain cases, be enough to implicate the Eighth Amendment. But because Section 1983 is only concerned with injuries of constitutional dimension, "the illness or injury for which assistance is sought [must be] sufficiently serious or painful to make the refusal of assistance uncivilized." *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Even under Brown's version of events, there was no way for Eck to draw the inference that Brown's pain was so serious that he needed immediate care. Indeed, other than Brown's lone request to be seen by medical personnel around 2:00 a.m., everything about the circumstances that night pointed to the opposite conclusion. Brown did not cry out, come back to reiterate his request, or display any distress whatsoever while under Eck's watch.[3] *Cf. Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1039-40 (7th Cir.

---

[3]A major portion of Brown's theory of this case rests on the notion that "[t]he defendant can't determine the severity of my pain." (Docket #40 ¶ 37).

2012) (the plaintiff had alleged a sufficiently serious condition by stating that he was attacked by another inmate, resulting in eye damage, bleeding, vomiting, dizziness, and severe pain); *Lewis v. McLean*, 864 F.3d 556, 558-60, 563 (7th Cir. 2017) (same, for back spasms causing the plaintiff to scream in pain, and which were ultimately treated with morphine).

Second, even if Brown had a serious medical need, Eck did not act with deliberate indifference to that need by telling Brown to wait. When an inmate alleges a delay (rather than complete denial) of medical assistance, he generally must have medical evidence showing the delay itself was harmful. *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013); *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (inmate must offer "verifying medical evidence" to show delay was objectively serious). However, when an inmate alleges he was subjected to prolonged, unnecessary pain, rather than claiming that the delay worsened an injury or medical condition, the inquiry shifts to the subjective element of the claim: "'A delay in treatment may show deliberate indifference if it exacerbated the inmate's injury or unnecessarily prolonged his pain,' and 'even brief, unexplained delays in treatment may constitute deliberate indifference.'" *Lewis*, 864 F.3d at 563. Thus, the defendant's reason for the delay, as well as the seriousness of the medical need, become the relevant questions. "'[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment.' Even a few days' delay in addressing a severely

---

Technically, this is true; Brown could have suffered severe pain during the entire night of September 12–13. But every objective indication available to those charged with his care suggested that he was not in severe pain. Brown cannot go to trial simply because it is not possible to disprove his subjective assertions of pain.

painful but readily treatable condition suffices to state a claim of deliberate indifference." *Smith*, 666 F.3d at 1040 (citation omitted).

Based on Eck's experience and training, and in light of the facts detailed above, Brown did not present himself as having an emergency situation. Thus, Eck lacked subjective knowledge of a serious risk to Brown's health sufficient to support a finding of deliberate indifference. *See Langston*, 100 F.3d at 1238 ("The Court in *Farmer* also emphasized that negligence is insufficient to impose liability: '[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.'"). Further, Eck followed his normal practice of informing Brown to wait for medical staff to return to the prison in a few hours to be seen for his complaints. Eck discharged his limited duty with respect to medical care by speaking with Eck about his complaints rather than ignoring him. Finally, because Brown was not in a medical emergency, Eck was not remiss in instructing Brown to wait for medical staff. Eck had no reason to believe that Brown's treatment by HSU personnel would be inadequate. *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005) (non-medical correctional staff may rely on expert care afforded by medical professionals so long as the correctional staff does not entirely ignore the prisoner). Consequently, no reasonable jury could conclude that Eck was deliberately indifferent to Brown's medical needs.

Brown contends that Eck violated prison policy by failing to call the nurse immediately upon hearing that he had difficulty breathing, failing to document Brown's request for care, failing to inquire further about Brown's condition, and failing to report Brown's complaint to his supervisor. (Docket #23 at 1–4); (Docket #25-1 at 3); (Docket #35 at 3–4, 6–7). Not only

do the prison policies at issue not appear to dictate such actions, deliberate indifference does not arise from a violation of prison policy standing alone. *Lewis v. Richards*, 107 F.3d 549, 553 n.5 (7th Cir. 1997); *Langston*, 100 F.3d at 1238. Brown must do more than line up Eck's conduct against the prison handbook. He must offer proof which meets the demanding deliberate indifference standard. *See Gayton*, 593 F.3d at 622-23 (nurse not deliberately indifferent by failing to follow protocol when she responded reasonably to the inmate's complaints). Brown has not done so here.

    **4.**    **CONCLUSION**

Viewing the record evidence in the light most favorable to Brown, the Court is constrained to grant summary judgment to Eck. Eck's motion must therefore be granted, Brown's motion must be denied, and this case will be dismissed with prejudice.

Accordingly,

**IT IS ORDERED** that Defendant's motion for summary judgment (Docket #26) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment (Docket #22) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 9th day of March, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Court